## Two Hundred and Seventy-Five Tons of Mineral Phosphates.

*(District Court, E. D. New York.* November 7, 1881.)

1. MARITIME LIENS.

> Upon the arrival of the vessel the phosphates in question were seized by the marshal, by virtue of process issued against the property in a possessory action, and sold at auction as it lay. *Held*, that the purchaser had a reasonable time for unloading, but that for any longer detention the master was entitled to demurrage; and that the claim for demurrage constituted a lien upon the property.

In Admiralty.

*Goodrich, Deady & Platt,* for libellant.

*Dan. Marvin,* for claimants.

BENEDICT, D. J. This is an action *in rem* to enforce a lien, claimed by the libellant upon a quantity of mineral phosphates lately on board the brig Dauntless, for delay in removing the same from the vessel aforesaid. The facts are somewhat peculiar:

The brig Dauntless arrived in the port of New York, from Brazil, laden with the phosphates in question, and was entered at the custom-house on the thirtieth day of July, 1881. Upon her arrival the property was seized by the marshal of this district, by virtue of process issued against it in an action of possession brought by one James C. Jewett, who claimed to be the owner of the property, and that it was wrongfully detained by the master of the brig. In that action the property in question was thereafter sold by the marshal as it lay in the vessel. The terms of sale were as follows: "Cargo of the Dauntless to be sold as it is on board, and as 275 tons in weight, and this number of tons to be paid for to the marshal; weight to be determined by the weigh-master's return, and purchaser to pay for any tons over 275 tons; and the marshal will refund the sum per ton for weight short of 275 tons. Bids to be for the ton of 2,240 pounds. The weigh-masters to be appointed by the marshal. Terms, 20 per cent. on day of sale, and the balance to make up the amount of 275 tons weight within three days after and before delivery of any cargo." The sale took place on Wednesday, the eighth day of September. The claimants bid off the phosphates, and paid the 20 per cent. on the spot. On the 13th they paid the balance of the purchase money, and on that day removed 50 tons from the vessel. The discharging continued until the twentieth of September, when all was removed. The master of the vessel claimed demurrage for the detention of his vessel after the eleventh of September, and, being refused, brings this action against the property to recover for such detention.

Upon the trial the claimants endeavored to show an express agreement between them and the master to allow them eight days in which to remove the property, but the testimony has not satisfied me of the

existence of such an agreement. It was also contended that the claimants were entitled to eight days in which to remove the property, by the usage of the port, but the testimony fails to prove the existence of such a usage. Reliance was also placed upon the statutes of the United States (Rev. St. § 2880) as giving the claimants eight days within which to remove this cargo. But the statute has no relation whatever to the duty devolving upon the buyer of this property under the circumstances stated. All that the testimony shows is an understanding between the claimants and the master that, so far as relates to the time of the removal of the property, the vessel should be considered as having just arrived and . entered at the custom-house. Upon such facts, the only obligation on the part of the buyers of the phosphates was to perform their implied promise to remove the property from the vessel within a. reasonable time, and the right of the libellant to demurrage depends upon the question whether the property in question was removed within a reasonable time from the thirteenth of September, that being the day on which the marshal delivered the property to the claimants. No detention of the vessel prior to that day can be imputed to the claimants, for prior to that day they had no right to remove the property.

Upon the question of what was a reasonable time within which to remove this property, I am of the opinion that with reasonable exertion all could have been discharged by the 16th. This leaves four days to be paid for. Thirty dollars a day is reasonable demurrage, and the amount of the demurrage is therefore $120.

The next question is whether a maritime lien attached to this merchandise for the amount of the demurrage in question. Here the peculiarity of the case is that the acts complained of which give rise to the claim for demurrage are not the acts of a shipper or of a consignee of the merchandise. The claimants were no parties to the contract of affreightment under which the property had been transported,—if such a contract there was,—but simply purchasers of the property as it lay in the vessel. Moreover, they purchased from the marshal, and must be held to have received the merchandise from the marshal free and clear of any existing encumbrance or charge.

The question presented by this state of facts appears, therefore, at first sight, to be different from the question that arises when the acts complained of are those of a shipper of property, or a consignee of property, under the ordinary contract of affreightment. And yet, in principle, there is no difference; for demurrage is only a reward to the vessel in compensation of the earnings she is improperly

caused to lose. *Sprague* v. *West*, Abbott, Adm. 554. And as, in the eye of the law, maritime, upon commercial reasons, the master of the ship is deemed to contract, in respect to the freight, rather with the merchandise than with the shipper, and his rights are, therefore, not made to depend upon any doctrine of agency. *Hyperion's Cargo*, 2 Low. 94. · So, upon the same grounds, the contract to remove this merchandise—which merchandise, it must be remembered, was the cargo of the brig actually on board as such—should be deemed to have been made with the merchandise as well as with the buyers thereof, and the merchandise, in consequence, is chargeable with the loss arising from the non-performance of that contract.

There must be a decree in favor of libellant for the sum of $120, and costs.